BURKHALTER KESSLER GOODMAN & GEORGE, L.L.P.
Gregory M. Clement, Esq., State Bar No. 154997
E-Mail: gclement@bkgglaw.com
David J. Darnell, Esq., State Bar No. 210166
E-Mail: ddarnell@bkgglaw.com
2020 Main Street, Suite 600
Irvine, California 92614
Telephone: (949) 975-7500
Facsimile: (949) 975-7501

Attorneys for Defendant,
TransAsia Infrastructure Holding LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CENTERPOINTE CAPITAL GROUP LLC, a Mauritius limited life company, in its own name and on behalf of TRANSASIA INFRASTRUCTURE HOLDING LLC, a Nevada limited liability company, | Case No. SACV08-1178 CJC (FMOx) |
| | Assigned For All Purposes To: The Honorable Cormac J. Carney Department 9B |
| Plaintiffs, | |
| v. | **OPPOSITION TO MOTION FILED BY SHEPPARD MULLIN RICHTER & HAMPTON ON BEHALF OF TRANSASIA INFRASTRUCTURE HOLDING LLC FOR AN ORDER:** |
| TRANSASIA INFRASTRUCTURE HOLDING LLC, a Nevada limited liability company; TRANSTECH LLC, a Nevada limited liability company; CC INFRASTRUCTURE MANAGEMENT SOLUTIONS PRIVATE LIMITED, an Indian corporation; RAVINDRA VERMA, an individual; and DOES 1-50, inclusive, | **1) SETTING ASIDE THE STAY FOR THE LIMITED PURPOSE OF DETERMING ITS MOTION; AND** |
| | **2) DISQUALIFYING BURKHALTER KESSLER GOODMAN & GEORGE LLP FROM REPRESENTING TRANSASIA INFRASTRUCTURE HOLDING LLC** |
| Defendants. | DATE:   March 9, 2009<br>TIME:   1:30 P.M.<br>PLACE:  Courtroom 9B |

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................... iv

I. INTRODUCTION ........................................................................ 1

    A.   A "MAJORITY IN INTEREST" OF THE MEMBERS OF TRANSASIA HAVE ASSUMED DE FACTO CONTROL OVER THAT ENTITY IN VIOLATION OF NEVADA LAW........................................................ 1

    B.   THE LAW FIRM RETAINED BY THE ROGUE MEMBERS OF TRANSASIA HAS PUT THE PERSONAL INTERESTS OF THOSE MEMBERS AHEAD OF THE BEST INTERESTS OF THE ENTITY............................................................................ 2

    C.   DR. VED PROPERLY EXERCISED HIS AUTHORITY AS A MANAGER TO RETAIN BKGG TO REPRESENT TRANSASIA AS A WHOLE. .................. 4

II. FACTS ........................................................................................ 5

    A.   TRANSASIA'S MEMBERS AGREED IN WRITING TO VEST SOLE MANAGEMENT AUTHORITY IN ITS MANAGERS. ..................................................... 5

    B.   DR. VERMA HAS TAKEN CONTROL OVER TRANSASIA IN DEROGATION OF DR. VED'S OWN RIGHTS AS A MANAGER. ............................. 6

    C.   INSTEAD OF CONSULTING WITH DR. VED AND ACTING ON BEHALF OF TRANSASIA, SHEPPARD HAS ADVOCATED ONLY THE POSITIONS ESPOUSED BY DR. VERMA. .......................... 7

III. DISCUSSION ............................................................................ 8

    A.   TRANSASIA REMAINS A MANAGER-MANAGED ENTITY BECAUSE NEVADA LAW REQUIRES UNANIMOUS CONSENT TO AMEND TRANSASIA'S ARTICLE OF ORGANIZATION............... 8

           1.   TransAsia was Originally Formed as an Entity Managed by a Single Manager. ..................................... 8

# TABLE OF CONTENTS

PAGE

2. With the Unanimous Consent of TransAsia's Members, Dr. Ved and Messrs. Chakraborty and Verma Supplanted Dr. Verma as TransAsia's Managers. ......................................................... 9

3. Nevada Law Bars TransAsia's Rogue Members From Converting It to a Entity Managed by its Members Without CCG's Consent. ........................... 10

B. NEVADA LAW DOES NOT AUTHORIZE MANAGEMENT BY A MAJORITY OF THE MANAGERS OF A LIMITED LIABILITY COMPANY. .............................................................. 12

1. Nevada Law Applies the Principle That a "Majority Rules" Only for those Limited Liability Companies Which Are Managed by Their Members. ............................................................ 12

2. Absent a Provision in an Operating Agreement Mandating a Contrary Result, the Doctrine of Expressio Unius Est Exclusio Alterius Compels the Conclusion That a Majority of Managers Cannot Impose Their Will Upon A Dissenting Manager. .......................................................... 13

C. THE MISCONDUCT OF SHEPPARD LEFT DR. VED NO PRACTICAL ALTERNATIVE BUT TO RETAIN SEPARATE COUNSEL TO REPRESENT TRANSASIA IN THE DERIVATIVE ACTION. ............... 15

1. Dr. Ved Retained BKGG to Represent TransAsia Both Generally With Regard to Dealings with Third Parties and in TransAsia's Capacity as a Plaintiff in the Above-Entitled Action. ....................... 15

2. Acting as a Manager of TransAsia, Dr. Ved Possessed the Statutory Right to Bind TransAsia to a Retainer Agreement. ...................................... 16

3. The Only Way in Which Dr. Ved Could Forestall Further Misconduct by Sheppard Was to Retain Separate Counsel. ................................................. 17

4. If the Managers Can Agree Upon a New Representative or If the Court Appoints a Receiver, BKGG Is Willing to Step Down in Favor of New Independent Counsel for TransAsia. ........................................................... 18

ii

1

# TABLE OF CONTENTS

PAGE

IV.  CONCLUSION ........................................................................ 19

# TABLE OF AUTHORITIES

**PAGE**

<u>Cases</u>

Arascada,
  44 Nev. 30, 189 P.619 (1920) ............................................................................ 14

*Boudette v. Barnette,*
  923 F.2d 754 (9th Cir. 1991)........................................................................... 14

*In re Estate of Prestie,*
  138 P.3d 520............................................................................................. 13

*Texas International Airlines, Inc. v. Bryan,*
  522 F. Supp. 1182 (D. Nev. 1981) ............................................................ 13, 14


<u>Statutes</u>

Nev. Revised Statute § 78.3774 ................................................................ 13

Nev. Revised Statute § 78.3778 ................................................................ 14

Nev. Revised Statute § 86.221 ................................................................. 11

Nev. Revised Statutes § 86.221 ............................................................... 10

Nev. Revised Statutes § 86.281 ............................................................... 16

Nev. Revised Statutes § 86.291 ............................................................ 8, 12

Nev. Revised Statutes § 86.301 ............................................................... 16

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

# I. **INTRODUCTION**

**A.     A "MAJORITY IN INTEREST" OF THE MEMBERS
        OF TRANSASIA HAVE ASSUMED DE FACT
        TO CONTROL OVER THAT ENTITY IN VIOLATION
        OF NEVADA LAW.**

Centerpointe Capital Group LLC ("CCG"), TransTech Infrastructure LLC ("TransTech"), and CC Infrastructure Management Solutions Private Limited ("CC Infrastructure") have become embroiled in a dispute regarding the nature and extent of their respective rights (either directly, as owners, or indirectly, through their managers) to exercise control over the assets and operations of TransAsia Infrastructure Holding LLC ("TransAsia").

There is no dispute that, from the time it was formed on October 17, 2001, TransAsia's Articles of Organization provided that it was to be managed by managers.  There is no dispute that, by a resolution dated December 27, 2007, all of TransAsia's members agreed unanimously to terminate its original Operating Agreement.  There is no dispute that, by a resolution dated January 1, 2008, all of TransAsia's members agreed unanimously to appoint Dr. Jay Ved, Dr. Ravindra Verma, and Prof. S.S. Chakraborty as TransAsia's managers.  There is no dispute that a resolution dated July 15, 2008, which purported to convert TransAsia from an entity managed by managers to an entity managed by its members, was signed by only two of three members.  There is no dispute that, by an

Annual List of Managers dated August 15, 2008 and filed with the Nevada Secretary of State on October 9, 2008, Dr. Verma acknowledged, under penalty of perjury, that TransAsia had three managers.

Relying upon the resolution dated July 15, 2008, which purported to convert TransAsia from an entity managed by specified managers to an entity managed by its members, TransTech and CC Infrastructure contend that they have acquired sole authority to act on behalf of TransAsia because they control a "majority in interest" of TransAsia.  As detailed below, however, Nevada law provides that such a change can be effected only by an amendment to the Articles of Organization and that any such amendment requires the unanimous consent of all of the members of the limited liability company.

**B.   THE LAW FIRM RETAINED BY THE ROGUE MEMBERS OF TRANSASIA HAS PUT THE PERSONAL INTERESTS OF THOSE MEMBERS AHEAD OF THE BEST INTERESTS OF THE ENTITY.**

Acting in their own names, TransTech and CC Infrastructure ostensibly hired Scott Lieberman and Sheppard Mullin Richter & Hampton ("Sheppard") to represent TransAsia (not its individual members) in connection with various disputes among CCG, TransTech, and CC Infrastructure (including the defense of the above-entitled action).  By contrast, acting through the manager it nominated to manage TransAsia rather than in its own name, CCG retained Burkhalter Kessler

2

1  Goodman & George LLP ("BKGG") as independent counsel to represent TransAsia.

2  Sheppard has filed a motion (the "Sheppard Motion") seeking to disqualify BKGG

3  

4  and asserting that only TransTech and CC Infrastructure possess authority to act on

5  behalf of TransAsia.

6  CCG contends that the July 15, 2008 resolution is ineffective because,

7  

8  under Nevada law, a change in the manner in which a limited liability company is

9  managed can be effected only by an amendment to the articles of organization.

10  Nevada law further specifies that any such an amendment requires the unanimous

11  

12  consent of all of the limited liability company's  members.  Therefore, TransAsia

13  remains a member-managed limited liability company.

14  Finally, ever since its was retained by TransTech and CC Infrastructure

15  

16  (ostensibly, to represent TransAsia) Sheppard has not limited itself to addressing

17  issues in the even-handed, neutral manner appropriate to a law firm which purports

18  to be representing the entity.  Rather, Sheppard has consistently taken the side of

19  

20  TransTech's manager in a dispute among TransAsia's members regarding whether

21  or not CCG entered into an oral agreement to sell its membership interest in

22  TransAsia to TransTech and CC Infrastructure at some time in the future.  Moreover

23  

24  Sheppard has consistently made factual misrepresentations to this court and to third

25  parties, which appear calculated to serve only the interests of TransTech and CC

26  Infrastructure, rather than the interests of TransAsia as a whole.

27  

28  

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

### C.   DR. VED PROPERLY EXERCISED HIS AUTHORITY AS A MANAGER TO RETAIN BKGG TO REPRESENT TRANSASIA AS A WHOLE.

Pursuant to Nevada law, as a manager appointed by TransAsia, Dr. Ved had authority to retain BKGG as counsel. The purported appointment of Sheppard as the attorney for TransAsia, however, was *ultra vires*. As admitted in each of the three declarations under penalty of perjury submitted in support of the Sheppard Motion, Sheppard was appointed by the *members* of TransAsia rather than by its *managers*.

BKGG, by contrast, was retained by Dr. Ved to represent the interests of TransAsia as a whole. In particular, the complaint in this case includes a derivative action asserted in the name of TransAsia against TransTech. BKGG's particular role in the present litigation is to serve as counsel for TransAsia in that derivative action. BKGG neither desires nor intends to interject itself into the contractual disputes among TransAsia's members.

BKGG would willingly withdraw as counsel for TransAsia provided that the managers could agree upon a neutral representative, or in the event that the court appoints a receiver in this matter. In the meantime, because Sheppard appears intent upon serving solely the interests of TransTech, it remains imperative that some independent attorney act as TransAsia's neutral advocate.

4

## II. FACTS

### A.   TRANSASIA'S MEMBERS AGREED IN WRITING TO VEST SOLE MANAGEMENT AUTHORITY IN ITS MANAGERS.

CCG is managed by Dr. Ved.  TransTech is managed by. Dr. Verma. CC Infrastructure is managed by Prof. Chakraborty.  Declaration of Dr. Jay Ved (the "Ved Declaration") ¶ 8.  CCG, TransTech, and CC Infrastructure each own a one-third interest in TransAsia Infrastructure Holding LLC ("TransAsia").

Prior to January 1, 2008, CCG owned no interest in TransAsia. TransAsia operated pursuant to an Operating Agreement and, in accordance with that document, Dr. Verma served as TransAsia's sole manager.  Declaration of Jay Ved, ¶ 6 Exhibit "A," Section 4.  On December 21, 2007, the then-current members of TransAsia voluntarily terminated the Operating Agreement.  Ved Declaration, ¶ 7, Exhibit "B."  Thereafter, CCG acquired a one-third interest in TransAsia.   Ved Declaration, ¶ 9.

By an agreement which was signed on behalf of each member of TransAsia by their respective managers, CCG, TransTech, and CC "unanimously resolved" to appoint their own managers (i.e., Dr. Ved, Dr. Verma, and Prof. Chakraborty) as the "sole Managers and Officers of TransAsia Infrastructure Holding LLC" in the place and stead of Dr. Verma.  Ved Declaration, ¶ 8, Exhibit "C."

5

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

That unanimous agreement did not allocate authority to any single manager or to a majority of the managers of TransAsia.    Ved Declaration, ¶ 11. Neither did the members adopt a new Operating Agreement vesting authority in one manager, or in a majority of the managers.    Ved Declaration, ¶ 7.  Rather, just as Dr. Ved and Messrs. Verma and Chakraborty had done when working together in the past, TransAsia's managers contemplated that they would act only by consensus. Ved Declaration, ¶ 11.

## B. DR. VERMA HAS TAKEN CONTROL OVER TRANSASIA IN DEROGATION OF DR. VED'S OWN RIGHTS AS A MANAGER.

There is substantial disagreement among Dr. Ved and Messrs. Verma and Chakraborty about the events which transpired and the discussion which occurred at their meeting on July 15, 2008.  What is undisputed, however, is that Dr. Verma generated an agreement dated July 15, 2008 and signed by Messrs. Verma and Chakraborty, which purported to convert TransAsia from an entity managed by its *managers* to an entity managed by a majority of its *members* (i.e., TransTech and CC Infrastructure, acting through Messrs. Verma and Chakraborty).    Ved Declaration, ¶ 22, Exhibit "G".  *That document is not signed by Dr. Ved or CCG.*

Notably, Dr. Verma himself signed, under penalty of perjury, statements dated, respectively, August 15, 2008 and October 6, 2008 (exactly one

month and nearly three months *after* the resolution which purported to dispense with the managers) acknowledging that Dr. Ved was still a manager of TransAsia.  Dr. Verma filed that document with the Nevada Secretary of State on October 9, 2008. Declaration of Ignacio J. Lazo (the "Lazo Declaration"), ¶ 10, Exhibit "I."

C.   **INSTEAD OF CONSULTING WITH DR. VED AND ACTING ON BEHALF OF TRANSASIA, SHEPPARD HAS ADVOCATED ONLY THE POSITIONS ESPOUSED BY DR. VERMA.**

TransTech and CC Infrastructure acknowledges that they (not their managers) retained Scott Lieberman of Sheppard to represent TransAsia. Declarations of Dr. Verma at ¶ 3 and Prof. Chakraborty at ¶ 3 accompanying the Sheppard Motion.  As is discussed in detail below and in the Lazo Declaration, Sheppard did not limit itself to addressing issues of common interest to TransAsia's members.   Rather, Sheppard has interjected itself into the middle of the dispute between CCG and TransTech concerning whether or not there was an oral agreement to sell CCG's interest in TransAsia to TRANSTECH and CC.   Lazo Declaration, ¶¶2, 3, 5, and 8 Exhibits "A," "B," "D," and "G."

Sheppard evidently did no independent investigation.  It certainly never sought to speak to Dr. Ved or learn his version of the events which transpired at the July 15, 2008 meeting.  Ved Declaration, ¶ 29.  Instead, Sheppard has sent at least *six* letters and emails repeatedly advocating Dr. Verma's version of events. Lazo

7

Declaration, Exhibits "A," "B," "D," "F," "G," and "H."  Sheppard maintains that an "oral agreement" between CCG bars Dr. Ved from participating in the management of the affairs of TransAsia.    Lazo Declaration, ¶¶ 2, 3, 5,and 8, Exhibits "A," "B," "D," and "G."  Sheppard, however, fails to explain or justify why it is even involving itself in that dispute, let alone why it is taking Dr. Verma's side so steadfastly.

### III.  DISCUSSION

**A.**  **TRANSASIA REMAINS A MANAGER-MANAGED ENTITY BECAUSE NEVADA LAW REQUIRES UNANIMOUS CONSENT TO AMEND TRANSASIA'S ARTICLE OF ORGANIZATION.**

**1.**  **TransAsia was Originally Formed as an Entity Managed by a Single Manager.**

Nevada limited liability companies may opt to be managed by managers rather than by their members.  Nevada Revised Statutes § 86.291-1 ("*Except as otherwise provided in this section or the articles of organization,* management of a limited-liability company is vested in its members in proportion to their contribution to its capital. . . .").  Nevada Law Revised Statutes § 86.291-3 authorizes managers to be vested with management authority for a Nevada limited liability company if "provision is made in the articles of organization. . . ."

The original members of TransAsia provided that it would be managed by Dr. Verma rather than by its members.  As evidenced by the attached certificate

8

of existence, TransAsia was formed in October 17, 2001.  Lazo Declaration, ¶ 12, Exhibit "K." ("the above limited liability company has Articles of Organization and no amendments on file in this office as of the date [February 12, 2009] of this certificate").   As evidenced by the accompanying screen shots of the business entity web page of the Nevada Secretary of State, TransAsia is identified as a "member-managed" entity.  Lazo Declaration, ¶ 11, Exhibit "J."

TransAsia initially operated pursuant to an Operating Agreement prepared at the time TransAsia was formed.  Declaration of Jay Ved, ¶ 6, Exhibit "A."   In accordance with that Operating Agreement,  Dr. Verma served as TransAsia's sole manager.  Declaration of Jay Ved, ¶ 6, Exhibit "A."

### 2.   With the Unanimous Consent of TransAsia's Members, Dr. Ved Possessed the Statutory Right to Bind TransAsia to a Retainer Agreement.

Pursuant to paragraph 2(i) of a Termination and Release Agreement dated December 21, 2007 which was signed by all of the former members of TransAsia and by Dr. Verma (then, the sole manager of TransAsia), *TransAsia's Operating Agreement of TransAsia was terminated effective December 21, 2007.* Ved Declaration, ¶ 7, Exhibit "B." Next, effective January 1, 2008, CCG became the owner of a one-third interest in TransAsia.  Ved Declaration, ¶ 9, Exhibit "D."  By a unanimous joint resolution dated January 1, 2008, the then-current members of TransAsia expressed their unequivocal intent to appoint Dr. Ved, Prof. Chakraborty,

9

and Dr. Verma (collectively, the "Managers") as joint managers of TransAsia in the place and stead of Dr. Verma.   Ved Declaration, ¶ 8, Exhibit "C."   ***TransAsia's members never adopted a new operating agreement.***  Ved Declaration, ¶ 7.

As of today's date, the records of the Nevada Secretary of State show that TransAsia remains a manager-managed limited liability company and that the managers of TransAsia are Dr. Verma, Prof. Chakraborty, *and* Dr. Ved.  Attached to the accompanying Declaration of Ignacio J. Lazo is a photocopy of TransAsia's Annual List of Managers, certified by the Secretary of State of Nevada, signed by Dr. Verma himself and dated as of August 15, 2008 (and dated again as of October 6, 2008), this document identifies TransAsia's managers as Dr. Ved, Dr. Verma, and Prof. Chakraborty.   Lazo Declaration, ¶ 10, Exhibit "I."   That document was filed with the Nevada Secretary of State on October 9, 2008.  Id. Attached also are photocopies of screen shots of the business entity web page of the Nevada Secretary of State.    These identify Dr. Ved, Dr. Verma, and Prof. Chakraborty as TransAsia's managers. Lazo Declaration, ¶ 11, Exhibit "J."

### 3.   Nevada Law Bars TransAsia's Rogue Members From Converting It to a Entity Managed by its Members Without CCG's Consent.

Absent a provision in the Operating Agreement of the limited liability company to the contrary, Nevada Revised Statutes § 86.221-1 authorizes the amendment of the articles of organization only upon a vote of "all of the members"

of the limited liability company.  As noted above, however, the original Operating Agreement was terminated in 2007 and was never replaced.  Consequently, TransAsia's Articles of Organization cannot be amended without the unanimous consent of all of its members.

The minutes of all meetings of the members of TransAsia which occurred after January 1, 2008 are signed only by Dr. Verma and Prof. Chakraborty. The resolution dated July 15, 2008, whereby CC Infrastructure and TransTech purported to convert TransAsia to a member-managed limited liability company rather than a manager-managed limited liability company, bears only the signatures of Messrs. Verma and Chakraborty on behalf of TransTech and CC Infrastructure, respectively.  It does not purport to be signed by or on behalf of Dr. Ved or CCG. Therefore, such a document is not effective to amend TransAsia's Articles of Organization.  Moreover, the Certificate of Existence dated February 12, 2009 which is attached as Exhibit "K" to the Lazo Declaration affirmatively certifies that TransAsia "has Articles of Organization and *no amendments on file in this office as of the date of this certificate*."

By operation of Nevada Revised Statutes §§ 86.291-3 and 86.221-1 and in light of the information posted on the Nevada Secretary of State's website, BKGG concluded that TransAsia was initially (and remains today) a manager-managed limited liability company.  In light of the unanimous resolution dated January 1, 2008 and the information posted by the Nevada Secretary of State,

11

Nevada Secretary of State, BKGG concluded that the managers of TransAsia since January 1, 2008 were and remain Dr. Verma, Prof. Chakraborty, and Dr. Ved.

## B. NEVADA LAW DOES NOT AUTHORIZE MANAGEMENT BY A MAJORITY OF THE MANAGERS OF A LIMITED LIABILITY COMPANY.

### 1. Nevada Law Applies the Principle That a "Majority Rules" Only for those Limited Liability Companies Which Are Managed by Their Members.

Nevada Revised Statutes § 86.291 -1 provides that, "Except as otherwise provided in this section or the articles of organization, management of a limited-liability company is vested in its members in proportion to their contribution to its capital. . . ."  In the case of a limited liability company which is managed by managers, however, Nevada law has no parallel provision authorizing management by a majority of the managers.  The courts which interpret Nevada law have consistently held that the absence of language mandates the drawing of a negative inference.

     **2.**     **Absent a Provision in an Operating Agreement Mandating a Contrary Result, the Doctrine of Expressio Unius Est Exclusio Alterius Compels the Conclusion That a Majority of Managers Cannot Impose Their Will Upon A Dissenting Manager.**

     The Nevada Supreme Court has consistently applied the rule that, where the legislature provides a rule in one particular instance, but not in another, the courts must infer that the omission was intentional.  In the case of *In re Estate of Prestie*, 138 P.3d 520 (2006) it noted that:

> We have previously recognized the fundamental rule of statutory construction that "[t]he mention of one thing implies the exclusion of another." Id. at 524
> Applying this rule of construction, we conclude that the revocation of a will under NRS 133.110, is unrelated to a trust proceeding.  Additionally, NRS 164.005 makes specific mention of NRS Chapters 132, 153, and 155, while making no mention of NRS Chapter 133.  By mentioning select chapters, we can imply that the Legislature's exclusion of other chapters was intentional.

*In re Estate of Prestie*, 138 P.3d at 524.

     The United States District Court for the District of Nevada also applied that doctrine in the case of *Texas International Airlines, Inc. v. Bryan*, 522 F. Supp. 1182 (D. Nev. 1981).  It noted that:

> The Nevada Takeover Bid Disclosure Act provides specific civil remedies in favor of an offeree (NRS 78.3774(2)) supra, and specific criminal penalties for violations by an offeror (NRS 78.3778 ) supra.  No remedy in favor of

13

> the target corporation is mentioned. ***In these circumstances, the maxim of statutory construction expressio unius est exclusio alterius is applicable. Nevada has long recognized and applied this maxim to the interpretation of legislation.*** Ex Parte Arascada, 44 Nev. 30, 189 P.619 (1920)."

*Texas International Airlines*, 522 F. Supp. at 1185. [Emphasis added.]

Given that the statute is entirely silent about whether a majority of managers can exercise control over a limited liability company where there is no operating agreement authorizing such a result, this court should follow the lead of the United States Court of Appeals for the Ninth Circuit which held that:

> We apply the doctrine of expressio unius est exclusio alterius. . . . This doctrine as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions. [Citation.] Thus if a statute states that a party can invoke an action by request, such request is presumed the exclusive manner in which the action may be invoked.

*Boudette v. Barnette*, 923 F.2d 754 (9th Cir. 1991).

In this instance, the legislature expressly provided that, in the case of an entity managed by its members, the vote of a majority in interest of the capital contributions would control. The legislature made no equivalent provision for limited liability companies which are managed by managers. Therefore, whatever the legislature may have assumed would be the rule for limited liability companies

14

which are managed by managers, the one rule about which the court can be certain is that the principle of "majority rules" does not apply.

Unlike the prior Operating Agreement, which had previously vested exclusive authority in Dr. Verma, the resolution which appointed Dr. Ved and Messrs. Verma and Chakraborty was entirely silent about how their authority was to be exercised. Since it would be unlikely that the parties intended the chaos which might ensue if each of three managers acted independently, the most logical inference is that the members intended that the managers act by consensus, just as they had historically done in the case of the two other entities with which Dr. Ved, and Messrs. Verma and Chakraborty were affiliated.[1]  Declaration of Dr. Ved., ¶ 10.

### C.  THE MISCONDUCT OF SHEPPARD LEFT DR. VED NO PRACTICAL ALTERNATIVE BUT TO RETAIN SEPARATE COUNSEL TO REPRESENT TRANSASIA IN THE DERIVATIVE ACTION.

**1.  Dr. Ved Retained BKGG to Represent TransAsia Both Generally With Regard to Dealings with Third Parties and in TransAsia's Capacity as a Plaintiff in the Above-Entitled Action.**

It bears noting that this case involves more than CCG's own direct claims for damages. CCG also asserted derivative claims in the name and on behalf of TransAsia. Consequently, TransAsia is named as both a plaintiff and defendant

---

[1] The Second Vivekananda Bridge Tollway Company Private Limited and TransAsia Infrastructure (India) Private Limited)

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

in the complaint.   There is no impropriety or inconsistency in retaining separate counsel to represent TransAsia in its capacity as a plaintiff in this action, especially in light of the fact that TransTech's and CC Infrastructure's employment of Sheppard to represent TransAsia was *ultra vires* because only the managers (not the members) of TransAsia had authority to act on its behalf.

### 2. Acting as a Manager of TransAsia, Dr. Ved Possessed the Statutory Right to Bind TransAsia to a Retainer Agreement.

Nevada Revised Statutes § 86.281 -6 give a limited liability company the power to enter into contracts.   In the case of a manager-managed limited liability company, the power to enter into contracts is expressly accorded to each individual manager.   More specifically, Nevada Revised Statutes § 86.301**Error! Bookmark not defined.**-1 provides that, "Except as otherwise provided in this chapter, its articles of organization or its operating agreement, no debt may be contracted or liability incurred by or on behalf of a limited-liability company, except by:  1. *One or more managers* of a company which is managed by a manager or managers. . . ." [Emphasis added.]   Unlike the case of Sheppard (which admits in the Sheppard Motion that it was [improperly] retained by TransTech and CC Infrastructure in their capacities *as members of TransAsia*), BKGG was properly retained by Dr. Ved acting in his capacity as a manager of TransAsia.

16

1    This statute also bolsters the conclusion that the legislature's failure to

2    apply a "majority rules" standard to member managed limited liability companies

3

4    was intentional.  The Nevada legislature clearly had no problem emphasizing that

5    certain actions could be taken by a single manager or by multiple managers.

6

7

8    **3.      The Only Way in Which Dr. Ved Could Forestall Further**

9    **Misconduct by Sheppard Was to Retain Separate Counsel.**

10   For the reasons detailed in CCG's pending motion to disqualify

11   Sheppard, the attorneys retained by TransTech and CC Infrastructure did not limit

12   themselves to acting as truly disinterested representatives of TransAsia as a whole.

13

14   Rather, from the time it was first retained, Sheppard advocated the positions

15   espoused by Dr. Verma.  Lazo Declaration, ¶¶ 2, 3, 5, 7, 8, and 9, Exhibits "A,"

16   "B," "D," "F," "G," and "H."  Sheppard not only embraced Dr. Verma's fatally

17

18   flawed claim that a simple majority of the members could amend TransAsia's

19   Articles of Organization, but it took Dr. Verma's side on the issue of the existence

20   and enforceability of the reported oral contract for CCG to sell its interest in

21

22   TransAsia to TransTech and CC Infrastructure for an undetermined sum on

23   unspecified terms.  Lazo Declaration, ¶¶ 2, 3, 5, 7, 8, and 9, Exhibits "A," "B," "D,"

24   "F," "G," and "H." That was a matter appropriate for Todd Friedland, acting as the

25

26   attorney for TransTech and Dr. Verma.  Involving itself in that dispute was entirely

27   inappropriate for Sheppard.

28

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

As detailed in the motion to disqualify Sheppard, counsel for CCG repeatedly wrote to Scott Lieberman expressing CCG's dismay about the inappropriate, partisan positions Sheppard was adopting and about the conflicts of interest inherent in Sheppard's stance.   Lazo Declaration, ¶¶ 4 and 6, Exhibits "C" and "E."   Sheppard rejected Dr. Ved's request to meet with him and asserted without qualification that its communications with TransTech and Dr. Verma were privileged. Lazo Declaration, ¶ 7 Exhibit "F." Under such circumstances, unable to secure the cooperation of the firm which billed itself as "counsel for TransAsia," Dr. Ved properly exercised his unilateral statutory authority and retained BKGG to represent TransAsia as a whole.

**4.    If the Managers Can Agree Upon a New Representative or If the Court Appoints a Receiver, BKGG Is Willing to Step Down in Favor of New Independent Counsel for TransAsia.**

BKGG has no axe to grind.   If TransAsia's managers can reach an agreement to hire a single lawyer or firm to represent TransAsia as a whole, BKGG would withdraw immediately from both this action and from the arbitration pending before the Singapore International Arbitration Centre.   Alternatively, if the court were to appoint a receiver and authorize the appointment of counsel for the receiver to represent TransAsia in those proceedings, BKGG would step down voluntarily. Until such events transpire, however, BKGG will continue to discharge its duty to

18

TransAsia as a whole for so long as the duly-appointed manager that hired BKGG to protect TransAsia's interests requests it to do so.

## IV. CONCLUSION

For the reasons set forth above, the management of TransAsia, by virtue of the unanimous consent of its members, is vested in three individual and co-equal managers. Each co-equal manager of TransAsia, including Dr. Ved, has the right and authority to bind TransAsia to a contract, including a contract for legal representation. Despite their attempts to the contrary, TransTech and CC Infrastructure cannot vest the authority to manage TransAsia in a majority vote of its members without first amending its Articles of Organization, which they have not done and cannot do without the approval of CCG. This impasse illustrates precisely why the appointment of a receiver pending dissolution appears inevitable.

BKGG was lawfully retained by Dr. Ved, acting in his capacity as a *manager* of TransAsia. Sheppard, conversely, was retained through an *ultra vires* act of TransAsia's *members* and has no right to assert any claims on behalf of TransAsia. Moreover, Sheppard has shown, through its actions, that it does not represent TransAsia in a neutral manner, but instead advocates for the position of TransTech and its manager, Dr. Verma. Separate counsel who represents the best interests of TransAsia is necessary for the protection of TransAsia as a whole.

1    Unless and until separate counsel is appointed for TransAsia by mutual

2  agreement or order of the above-entitled court, BKGG will continue to act on behalf

3  of TransAsia.

4

5

6  DATED: February 23, 2009              BURKHALTER KESSLER
7                                        GOODMAN & GEORGE LLP

8

9                                  By: _____
10                                       Gregory M. Clement, Esq.
                                         Attorneys for Defendant,
11                                       TRANSASIA INFRASTRUCTURE
                                         HOLDING LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

      I am employed in the County of Orange, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 2020 Main Street, Suite 600, Irvine, California 92614.

      On **February 23, 2009**, I caused the foregoing document described as;

**OPPOSITION TO MOTION FILED BY SHEPPARD MULLIN RICHTER & HAMPTON ON BEHALF OF TRANSASIA INFRASTRUCTURE HOLDING LLC FOR AN ORDER:**

    **1) SETTING ASIDE THE STAY FOR THE LIMITED PURPOSE OF DETERMING ITS MOTION; AND**
    **2) DISQUALIFYING   BURKHALTER KESSLER GOODMAN & GEORGE LLP FROM REPRESENTING TRANSASIA INFRASTRUCTURE HOLDING LLC**

to be served on the interested parties in this action [X] by placing [ ] the original [X] a true copy thereof enclosed in a sealed envelope addressed as stated on the attached Service List:

    **[X]**    **BY MAIL**

      **[ ]** I deposited such envelope in the mail at **Irvine, California**.  The envelope was mailed with postage thereon fully prepaid.

      **[X]**   I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day in the ordinary course of business.  I am aware that, on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

      **[X]**   **(Federal)**   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

      Executed on **February 23, 2009**, at **Irvine, California**.

SANDRA L. PETTIT

21

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**

1

## SERVICE LIST

2

3 Jonathan P. Hersey, Esq.
Scott B. Lieberman, Esq.
4 Brian B. Farrell, Esq.
SHEPPARD MULLIN RICHTER & HAMPTON LLP
5 650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
6 Telephone: 714-513-5100
Facsimile: 714-513-5130
7 E-mails: jhersey@sheppardmullin.com
slieberman@sheppardmullin.com
8 bfarrell@sheppardmullin.com

9 ATTORNEYS FOR DEFENDANT,
TRANSASIA INFRASTRUCTURE HOLDING LLC

10
Thomas H. Cadden, Esq.
11 Charlene A. Busch, Esq.
Ignacio J. Lazo, Esq.
Nathaniel J. Tarvin, Esq.
12 CADDEN & FULLER LLP
114 Pacifica, Suite 450
13 Irvine, California 92618
Telephone: 949-788-0827
14
ATTORNEYS FOR PLAINTIFF,
15 CENTERPOINTE CAPITAL GROUP LLC

16 Todd G. Friedland, Esq.
Stephens Friedland LLP
17 4695 MacArthur Court, Suite 310
Newport Beach, California 92660
18 Telephone: 949-468-3200
Facsimile: 949-468-3201
19 E-Mail: todd@sf-lawyers.com

20 ATTORNEYS FOR DEFENDANT,
TRANSTECH INFRASTRUCTURE LLC AND
21 RAVINDRA VERMA

22

23

24

25

26

27

28

22

**OPPOSITION TO MOTION TO SET ASIDE THE STAY AND DISQUALIFY**