SHEPPARD MULLIN RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
JONATHAN P. HERSEY, Cal. Bar No. 189240
SCOTT B. LIEBERMAN, Cal. Bar No. 208764
BRIAN B. FARRELL, Cal. Bar No. 247878
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:   714-513-5100
Facsimile:   714-513-5130
E-mails:        jhersey@sheppardmullin.com
                     slieberman@sheppardmullin.com
                     bfarrell@sheppardmullin.com

Attorneys for Defendant
TRANSASIA INFRASTRUCTURE
HOLDING LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| CENTERPOINTE CAPITAL GROUP LLC, a Mauritius limited life company, in its own name and on behalf of TRANSASIA INFRASTRUCTURE HOLDING LLC, a Nevada limited liability company,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TRANSASIA INFRASTRUCTURE HOLDING LLC, a Nevada limited liability company; TRANSTECH LLC, a Nevada limited liability company; CC INFRASTRUCTURE MANAGEMENT SOLUTIONS PRIVATE LIMITED, an Indian corporation; RAVINDRA VERMA, an individual; and DOES 1-50, inclusive,<br><br>                    Defendants. | Case No. SACV08-1178 CJC (FMOx)<br><br>The Honorable Cormac J. Carney<br><br>**DEFENDANT TRANSASIA INFRASTRUCTURE HOLDING LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE AND RECONSIDER ORDER COMPELLING SINGAPORE ARBITRATION**<br><br>Date:        July 13, 2009<br>Time:        1:30 p.m.<br>CtRoom:  9B<br><br>Complaint Filed:   September 4, 2008<br>Matter Removed:  October 21, 2008<br>Trial Date:           None Set |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ..................................................................................1

II.  LEGAL STANDARD...........................................................................2

III. CCG WAS PROVIDED WITH A COPY OF THE 2003
     AGREEMENT BEFORE IT SIGNED THE SPA AND
     THEREFORE IT IS NOT "NEWLY DISCOVERED"
     EVIDENCE............................................................................................3

IV.  CCG DID NOT SUCCEED TO THE 2003 AGREEMENT AND
     PBIDC EXPRESSLY RELINQUISHED ALL CLAIMS TO
     THE $1.3 MILLION .............................................................................4

V.   EVEN IF THE 2003 AGREEMENT WERE "NEW"
     EVIDENCE, ITS ARBITRATION PROVISION IS NOT A
     MATERIAL CHANGE IN THE FACTS WARRANTING
     RECONSIDERATION ..........................................................................6

VI.  CONCLUSION …………………………………………………..;;;;.  7

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*389 Orange St. Partners v. Arnold,*
    179 F.3d 656 (9th Cir. 1999) ...................................................................3

4

*Bhatnagar v. Surrendra Overseas Limited,*
    52 F.3d 1220 (3rd Cir. 1995) ..................................................................3

5

6

*Hopkins v. Andaya,*
    958 F.2d 881 (9th Cir. 1992) ..................................................................3

7

*Kona Enterprises, Inc. v. Estate of Bishop,*
    229 F.3d 877 (9th Cir. 2000) ..............................................................2, 7

8

9

*School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,*
    5 F.3d 1255 (9th Cir. 1993) ....................................................................3

10

<u>Miscellaneous</u>

11

Local Rule 7-18 .........................................................................................6

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO REOPEN CASE
                                                        AND RECONSIDER ORDER

## I.  **INTRODUCTION**

Centerpointe Capital Group ("CCG") continues to cling to the notion that some other agreement (*i.e.,* the 2003 Agreement between TransAsia and PBIDC) controls CCG's claims against TransAsia.  CCG is not a party to that agreement and does not have standing to sue on that agreement.  And, most tellingly, CCG did not assert any claims in its Complaint based on that agreement.  On the contrary, the only contract between CCG and TransAsia related to the disputed $1.3 million is the 2007 Sale and Purchase Agreement ("SPA") quoted in, attached to, and incorporated by reference into CCG's Complaint.  The SPA contains an unequivocal and broad arbitration provision requiring that any disputes under that agreement be resolved by the Singapore International Arbitration Centre ("SIAC").  This Court previously rejected CCG's attempt to avoid its agreement to arbitrate when it granted TransAsia's motion to compel arbitration, and denied CCG's motion for remand.  There is no basis for CCG to revisit that order.  CCG's assertion that it only newly discovered the 2003 Agreement is unfounded, and its entire Motion is improper.

First, TransAsia provided copies of all of its books and records to CCG, including the 2003 Agreement, prior to the time CCG entered into the SPA.  Indeed, it is simply not credible for the CCG to argue now—a year and a half after it purchased its membership units in TransAsia—that it was not fully apprised of the rights and obligations to which it was succeeding under the SPA.  To the extent CCG misplaced, ignored or forgot about the 2003 Agreement does not make the 2003 Agreement "newly discovered" evidence.  Nor does it change the fact that CCG has no right to sue on that contract, and has not sued on that contract.

Second, the plain and unambiguous language of the SPA defeats CCG's claims that it succeeded to PBIDC's right under the 2003 Agreement or that CCG is entitled to any part of the $1.3 million.  The SPA expressly states that the $5.6 million that CCG paid PBIDC to acquire its shares in TransAsia was

1   "inclusive" of the $1.3 million.  In other words, CCG paid a reduced price for

2   PBIDC's interest in TransAsia, and in return, PBIDC and CCG expressly released

3   TransAsia from any further claim for the money.  By its claims, CCG is now

4   demanding payment of the same $1.3 million that the SPA unambiguously states has

5   already been "paid" as part of CCG's buy-out of PBIDC's shares of TransAsia.

6          CCG conveniently fails to mention in its Motion that it recently sent a

7   demand to PBIDC seeking information and documents in an attempt to establish its

8   right to the $1.3 million.  PBIDC's response obliterates CCG's claims because

9   PBIDC has confirmed that it did ***not*** assign any right to the $1.3 million to CCG,

10  that it waived any right to the $1.3 million as memorialized in the SPA, and that

11  TransAsia's obligation to pay the $1.3 million was extinguished when PBIDC

12  received CCG's payment for its shares.  CCG's claim that it succeeded to PBIDC's

13  right under the 2003 Agreement is belied by the true "new" evidence of which CCG

14  fails to inform the Court.

15         Finally, even if the 2003 Agreement were "newly discovered"

16  evidence, it is not the type of material change of facts warranting this Court's

17  reconsideration.  Essentially, CCG's Motion boils down to nothing more than a

18  request to change the venue of the arbitration from Singapore to the United States.

19  But CCG agreed in the SPA to arbitrate in Singapore, the Court ordered the parties

20  to complete that arbitration, and the parties have proceeded before the SIAC.  The

21  material facts have not changed, and CCG's request to be relieved of its obligation

22  to complete the SIAC arbitration is not the proper subject of a Motion for

23  Reconsideration.

24  **II.    LEGAL STANDARD**

25         Reconsideration is an "extraordinary remedy, to be used sparingly in

26  the interests of finality and conservation of judicial resources."  *Kona Enterprises,*

27  *Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  "A motion for

28  reconsideration should not be granted, absent highly unusual circumstances, unless

1   the district court is presented with newly discovered evidence, committed clear

2   error, or if there is an intervening change in the controlling law." *Id.* (quoting *389*

3   *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  A motion for

4   reconsideration cannot be based on evidence that could reasonably have been

5   discovered prior to the court's ruling.  *Hopkins v. Andaya*, 958 F.2d 881, 887, fn. 5

6   (9th Cir. 1992).  Similarly, a party's "failure to file documents in an original motion

7   or opposition does not turn the late filed documents into 'newly discovered

8   evidence.'" *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d

9   1255, 1263 (9th Cir. 1993).  *See also Bhatnagar v. Surrendra Overseas Limited*, 52

10  F.3d 1220, 1231 (3rd Cir. 1995) (finding that mere presentation of arguments or

11  evidence *seriatim* does not justify reconsideration, and that reargument should not

12  be used as a means to argue new facts that inexcusably were not presented to the

13  court in the matter previously decided).

14  **III.   CCG WAS PROVIDED WITH A COPY OF THE 2003 AGREEMENT**

15       **BEFORE IT SIGNED THE SPA AND THEREFORE IT IS NOT**

16       **"NEWLY DISCOVERED" EVIDENCE**

17       CCG would have this Court believe that it agreed to pay $5.6 million to

18  buy-into TransAsia without ever having seen a copy of the underlying agreement

19  that CCG now claims forms the basis of its entitlement to $1.3 million from

20  TransAsia.  That assertion is just as unbelievable as CCG's claim that Dr. Ved

21  blindly entrusted Dr. Verma to negotiate the entire transaction on CCG's behalf.

22       CCG claims that it has just "discovered" the 2003 Agreement between

23  PBIDC and TransAsia and that the arbitration provision of that agreement should

24  control this dispute.  However, as set forth in the Declaration of Dr. Ravindra Verma

25  submitted in support of this Opposition, TransAsia provided copies of all of its

26  books and records, including the 2003 Agreement, to CCG prior to CCG's purchase

27  of PBIDC's interest.  Verma Decl., ¶¶ 5-6.  Since CCG and Dr. Ved received a copy

28  of this document, it is not "newly discovered" evidence.  CCG cannot seek

1  reconsideration, and waste this Court's time, because it was unable to locate its copy
2  of the 2003 Agreement before filing suit for breach of the 2007 SPA.

3          CCG knew about the 2003 Agreement at the time it filed its lawsuit, yet
4  obviously to sue for breach of the 2007 SPA.  It quoted, attached and incorporated
5  by reference the SPA as the basis for its breach of contract claim against TransAsia.
6  Nowhere in its Complaint does CCG even mention the 2003 Agreement.  The SPA
7  is the only agreement to which CCG is a party, and it provides an express and
8  unequivocal arbitration clause before the SIAC, which was the basis for this Court's
9  Order compelling arbitration before the SIAC.  Once CCG realized that the express
10 language of the SPA also defeats its claim to the $1.3 million, CCG quickly took the
11 position that some other contract forms the basis of its claims.  But CCG is not a
12 party to that other agreement, has not sued on that other agreement, and as set forth
13 below, has not succeeded to the 2003 Agreement between PBIDC and TransAsia.
14 CCG therefore has no right to enforce the U.S. arbitration provision in that contract.

15 **IV.**   **CCG DID NOT SUCCEED TO THE 2003 AGREEMENT AND PBIDC**
16         **EXPRESSLY RELINQUISHED ALL CLAIMS TO THE $1.3 MILLION**

17         The SPA expressly undermines CCG's claims that it is either entitled to
18 the $1.3 million payment or that it succeeded to the 2003 Agreement.  Section 1.2 of
19 the SPA defines TransAsia's prior $1.3 million obligation for the project
20 development costs as the "PDC Amount."  Section 1.2 concludes that, "The Parties
21 acknowledge that the PBIDC Purchase Price is *inclusive of* the PDC Amount."
22 (Emphasis added.)  In other words, the $5,683,290 that CCG paid for PBIDC's
23 shares (the PBIDC Purchase Price) expressly included the $1.3 million TransAsia
24 owed to PBIDC (the PDC Amount), and CCG's breach of contract and account
25 stated claims are fatally defective on their face.

26         Consistent with that understanding, and as part of the SPA, PBIDC
27 released any and all claims against TransAsia arising out of the Shareholders
28 Agreement and Operating Agreement.  These two Termination and Release

1  Agreements by PBIDC are attachments to the SPA.  *See* Verma Decl., ¶ 4.  CCG's

2  principal owner, Dr. Ved, even initialed each page of the two Termination and

3  Release Agreements as part of and in conjunction with CCG's execution of the SPA.

4         The express terms of the SPA state that CCG is not entitled to the PDC

5  Amount and that PBIDC had waived its right to that PDC Amount before CCG

6  purchased PBIDC's shares.  In addition, PBIDC recently confirmed on May 21,

7  2009, in response to CCG's discovery requests that it did not assign its rights under

8  the 2003 Agreement to CCG.  According to PBIDC, CCG did not succeed to

9  PBIDC's right under the 2003 Agreement, CCG has no right to the $1.3 million, and

10 CCG has no right to enforce the arbitration provision in the 2003 agreement to

11 which it was not a party.  Specifically, CCG's counsel, Ignacio Lazo, sent a request

12 to PBIDC on or about April 22, 2009 seeking information and documents related to

13 CCG's claim to the PDC Amount.  PBIDC's in-house counsel, Hillary Jassey,

14 responded on May 21, 2009 stating the following:

- PBIDC did not assign any right to payment of the PDC Amount to anyone;

- PBIDC waived any right to payment of the PDC Amount as memorialised in paragraph 1.2 of the Agreement;

- Any obligation on the part of TransAsia to pay the PDC Amount was extinguished upon receipt by PBIDC of the PBIDC Purchase Price (as acknowledged by the Parties in paragraph 1.2 of the Agreement); and

- Paragraph 1.2 of the Agreement would appear to give TransAsia a defence to any claim for recovery of the PDC Amount by PBIDC (given that the PBIDC Purchase Price was duly paid to PBIDC).

24 *See* Verma Decl., ¶ 7 & Exh. A thereto.

25        Ironically, PBIDC's letter is the only "new evidence" in this case, and

26 CCG failed to submit that with its Motion for Reconsideration.  A plain reading of

27 PBIDC's letter conclusively establishes that PBIDC waived its right to the PDC

28 Amount **before** selling its interest to CCG and that it did not assign its rights to

1   anyone, including CCG.  Therefore, CCG did not succeed to the 2003 Agreement
2   and has no right to seek to enforce any of its terms, including the arbitration
3   provision providing for a U.S.-based arbitration.
4           In short, CCG was not a party to the 2003 Agreement and has no right
5   to enforce its terms, especially because that agreement has been extinguished.  The
6   only agreement at issue here to which CCG is a party, the SPA, provides that any
7   dispute arising under that agreement will be determined by arbitration in front of the
8   SIAC.  CCG should be held to the only effective agreement which defines its rights
9   and obligations – the SPA – and that agreement provides for arbitration in
10  Singapore.  CCG's now belated attempt to shoehorn the 2003 Agreement into this
11  dispute for the sole purpose of moving the locale of the arbitration back to the
12  United States should be rejected, and CCG's Motion for Reconsideration should be
13  denied.

14  **V.     EVEN IF THE 2003 AGREEMENT WERE "NEW" EVIDENCE, ITS**
15  **ARBITRATION PROVISION IS NOT A MATERIAL CHANGE IN**
16  **THE FACTS WARRANTING RECONSIDERATION**

17          Local Rule 7-18 provides, "A motion for reconsideration of the
18  decision on any motion may be made ***only*** on the grounds of (a) ***a material***
19  ***difference in fact*** or law from that presented to the Court before such decision that
20  in the exercise of reasonable diligence could not have been known to the party
21  moving for reconsideration at the time of such decision . . ."  (Emphasis added.)
22  Here there has been no change in the facts underlying this Court's earlier Order
23  compelling arbitration of this dispute to the SIAC because the 2003 Agreement was
24  already known to CCG, and CCG did not succeed to any rights under that 2003
25  Agreement.  However, even if the 2003 Agreement were considered "newly
26  discovered" evidence, it does not present the type of "material difference in fact"
27  justifying this Court's reconsideration of its order compelling arbitration.  CCG's
28  Motion does not even seek to invalidate the Court's Order compelling arbitration.

1  Instead, it seeks nothing more than a change in venue of that arbitration.  This is not

2  the "highly unusual circumstances" required for the Court to expend additional

3  judicial resources reconsidering this issue, or to upset the arbitration process already

4  well under way before the SIAC.  *Kona Enterprises, Inc., supra*, 229 F.3d at 890.

5  **VI.    CONCLUSION**

6             For the foregoing reasons, TransAsia respectfully requests that the

7  Court deny Plaintiff's improper motion to reconsider the Order compelling

8  arbitration in Singapore under the rules of the SIAC.

9  DATED:  June 29, 2009

10                              SHEPPARD MULLIN RICHTER & HAMPTON LLP

11

12                        By    _____/s/  Scott B. Lieberman_____

13                                       SCOTT B. LIEBERMAN

14                                    Attorneys for Defendant
15                                TRANSASIA INFRASTRUCTURE
16                                        HOLDING LLC

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO REOPEN CASE
                                                                AND RECONSIDER ORDER